**Jody LEWIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–00–00131–CR.**

Court of Appeals of Texas,
Texarkana.

Submitted Aug. 2, 2001.

Decided Aug. 14, 2001.

Steven R. Miears, Telephone, for Appellant.

James S. Moss, Special Assistant County Attorney, Bonham, for the State.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

Opinion by Justice GRANT.

Jody Lewis appeals his conviction by a jury for the offense of tampering with evidence. The trial court sentenced him to ten years' confinement, but suspended the imposition of his sentence and placed him on ten years' community supervision.

Lewis contends he received ineffective assistance of counsel when his trial attorney failed to seek the suppression of the cocaine, which was removed from Lewis's stomach without his consent by means of a gastric lavage. He also contends the evidence is legally and factually insufficient to support his conviction.

The record shows that Lewis was a passenger in a car that police stopped around 5:30 a.m. because it had a dealer's tag improperly positioned in the rear window. Officer Jason Lowry testified that after

stopping the car, he observed it did not have a current inspection sticker. He testified that both Lewis and the driver, Jerome Leshaw, appeared extremely nervous.

Lowry wrote a citation and had Leshaw step to the back of the car to provide some of the needed information. He testified that for his own safety he frisked Leshaw for weapons. He then walked to the passenger's side of the car, asked Lewis for identification, and asked him to step out of the car so he could check Lewis and the interior of the car for weapons.

Lowry testified that he witnessed Lewis first lean toward his left side with both hands and then emerge quickly from the car slumped over at his midsection with his hands toward his mouth. Lowry drew his service weapon and told Lewis to show him his hands. Lewis complied, but Lowry noticed that Lewis was chewing something and had a plastic bag sticking partially from his mouth. Lowry restrained Lewis with handcuffs, put him on the ground, and ordered him to spit out the contents of his mouth, but Lewis refused to comply and kept chewing.

Another officer, Sergeant Steven Underwood, arrived and also ordered Lewis to spit out the contents of his mouth. This time Lewis spit out a small plastic bag containing less than an ounce of a green leafy substance, which Lowry and Underwood both testified looked and smelled like marihuana. Lowry testified he could also see a white substance inside Lewis's mouth. Underwood testified that he saw a white powdery substance resembling cocaine on the bag they obtained from Lewis's mouth and on the passenger's seat of Lewis's car. However, the testimony shows the bag was never tested and the substance found on the passenger's seat was later determined not to be cocaine.

The officers tried to force open Lewis's mouth by physically grabbing his jaw and also by applying pressure to certain points on his neck. They sprayed him with pepper spray. They also used tweezers to try to remove some of the contents of Lewis's mouth. Lewis's mouth began to bleed. Nevertheless, Lewis refused to expel the remaining contents of his mouth and continued chewing.

Underwood and Lowry testified that they called for the paramedics because they were concerned Lewis would either choke or suffer ill effects from swallowing cocaine. The paramedics testified they saw plastic, a green leafy substance, and a white powdery substance in Lewis's mouth.

Lewis was transported to the hospital, where Dr. Larry Maples used a device to open his mouth and administered a gastric lavage, a stomach evacuation technique in which a plastic tube is inserted into the stomach through the mouth and saline is introduced into the stomach and then drained back out. Lowry testified that Maples removed from Lewis's mouth another small plastic bag, which tests showed exhibited trace amounts of cocaine. Maples testified that he did not administer the gastric lavage on behalf of the police, but that it is standard procedure to evacuate the stomach of someone who has ingested a large quantity of a toxic substance. He testified that if Lewis had ingested one gram of cocaine, he could have a heart attack or a stroke leading to death.

Various witnesses testified that they saw blue plastic, large white particles, and a green leafy substance collected in the clear bags containing the contents of Lewis's stomach. Officer Terry Bee testified that he obtained a warrant before seizing the product of the gastric lavage from the hospital, though that warrant is not in the

record.[1] The evidence showed that the contents of Lewis's stomach contained one gram of cocaine.

Leshaw gave a similar account to Lowry's until the time Lowry approached the passenger side of the car. Leshaw testified that he saw Lowry open the passenger's side door, that he looked away briefly, and that when he looked back, he saw Lowry behind Lewis with his forearm at Lewis's throat and his service weapon at Lewis's head. Later, he saw the officers trying to open Lewis's mouth, and he testified he heard Lewis tell the officers to get off of him. He also testified that he did not see either cocaine or marihuana in the car.

Lewis testified that he did not have anything in his mouth and that the officers only thought they saw something there. He testified that while Lowry was frisking him for weapons, Lowry pulled his service weapon and told him to get on the ground. He also testified that he did not have cocaine in his stomach.

Lewis first contends he received ineffective assistance of counsel. The standard for testing claims of ineffective assistance of counsel is set out by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted for Texas constitutional claims in *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex.Crim.App. 1986). To prevail, Lewis must prove by a preponderance of the evidence (1) that his attorney's representation fell below an objective standard of reasonableness and (2) that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052; *Tong v. State*, 25 S.W.3d 707, 712 (Tex.Crim.App.2000).

To meet this burden, Lewis must prove that his attorney's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for his attorney's deficiency, the result of the trial would have been different. *Strickland*, 466 U.S. at 688, 694, 104 S.Ct. 2052; *Tong*, 25 S.W.3d at 712. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052; *Tong*, 25 S.W.3d at 712.

Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App.1999). Failure to make the required showing of either deficient performance or sufficient prejudice defeats an ineffectiveness claim. *Id.*

Our review of counsel's representation is highly deferential; we indulge a strong presumption that counsel's conduct falls within a wide range of reasonable representation. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052; *Tong*, 25 S.W.3d at 712. We will not second-guess through hindsight the strategy of counsel at trial, nor will the fact that another attorney might have pursued a different course support a finding of ineffectiveness. *Blott v. State*, 588 S.W.2d 588, 592 (Tex.Crim.App. 1979). The fact that another attorney, even Lewis's attorney on appeal, might have pursued a different course of action does not necessarily indicate ineffective assistance. *Harner v. State*, 997 S.W.2d 695, 704 (Tex.App.—Texarkana 1999, no pet.).

Lewis contends his trial attorney was deficient in failing to seek to have the cocaine suppressed as the fruit of an illegal

---

1. The State contends the hospital required the police to obtain a warrant before it would release the contents of Lewis's stomach. However, the record does not support that contention.

search.[2] He contends the evidence should have been suppressed under *Rochin v. California*, 342 U.S. 165, 166, 72 S.Ct. 205, 96 L.Ed. 183, 187 (1952), in which police directed a doctor to administer an emetic solution to the defendant to induce vomiting after he swallowed two capsules that had been on a nightstand in his bedroom. The officers had information that the defendant was selling narcotics and had forced their way into his bedroom without a warrant. *Id.* The United States Supreme Court held that the officers' conduct violated the Due Process Clause of the Fourteenth Amendment, writing

> [T]he proceedings by which this conviction was obtained do more than offend some fastidious squeamishness or private sentimentalism about combatting crime too energetically. This is conduct that shocks the conscience. Illegally breaking into the privacy of the petitioner, the struggle to open his mouth and remove what was there, the forcible extraction of his stomach's contents—this course of proceeding by agents of government to obtain evidence is bound to offend even hardened sensibilities. They are methods too close to the rack and the screw to permit of constitutional differentiation.

*Id.*, 342 U.S. at 172, 72 S.Ct. 205.

After *Rochin*, the Supreme Court rejected a similar due process challenge to the taking of a blood sample by a doctor at a hospital from a person who was suspected of driving while intoxicated. *Schmerber v. California*, 384 U.S. 757, 760, 86 S.Ct. 1826, 16 L.Ed.2d 908, 913 (1966); *Breithaupt v. Abram*, 352 U.S. 432, 435, 77 S.Ct. 408, 1 L.Ed.2d 448, 451 (1957). The Supreme Court distinguished *Rochin* be-

cause there is "nothing 'brutal' or 'offensive' in the taking of a sample of blood when done . . . under the protective eye of a physician." *Breithaupt*, 352 U.S. at 435, 77 S.Ct. 408. In *Schmerber*, the Supreme Court also held that the taking of the blood sample did not violate the defendant's privilege against self-incrimination or his right to counsel (because a blood sample is nontestimonial evidence), or his right to be free from unreasonable searches (because the sample was taken incident to a lawful arrest, was justified by the exigencies of preserving the evidence, and was taken by a doctor in a hospital environment according to accepted medical practices). *Schmerber*, 384 U.S. at 765, 772, 86 S.Ct. 1826.

In *Winston v. Lee*, 470 U.S. 753, 766, 105 S.Ct. 1611, 84 L.Ed.2d 662, 672–73 (1985), the Supreme Court held, under *Schmerber*, that requiring the defendant to undergo an operation to remove a bullet, which could then be used as evidence that he attempted to commit a robbery, violated the defendant's right to be free from unreasonable searches. The Supreme Court weighed the interests of the individual—the requirement of probable cause or exigent circumstances, the extent to which the procedure may threaten the person's health or safety, the extent of the intrusion on the person's dignitary interests in personal privacy and bodily integrity—against the interests of the community in fairly and accurately determining guilt or innocence. *Id.*, 470 U.S. at 760–62, 105 S.Ct. 1611.

Lower federal courts have upheld the use of stomach pumps, emetics, or laxatives in cases in which the defendants were suspected of having ingested potential evidence. *See* Michelle Migdal Gee, Annota-

---

**2.** The record shows that Lewis's trial attorney moved to suppress the cocaine on the ground that Lowry did not have a sufficient basis to order Lewis from his vehicle. The trial court overruled that motion after a hearing. However, Lewis's attorney did not move for suppression based on the use of the gastric lavage.

tion, *Propriety of Search Involving Removal of Natural Substance or Foreign Object from Body by Actual or Threatened Force*, 66 A.L.R. FED. 119, 140–44, 1984 WL 263143 (1984). Courts have also upheld the use of body cavity searches by physicians at the request or direction of authorities when there is a reasonable basis to suspect that contraband is present. *See id.* at 144–61. However, both the stomach pumping cases and the body cavity search cases have generally involved searches of prison inmates and searches at the United States border. *See id.* at 124. In both contexts, the suspect's expectation of privacy is thought to be less reasonable and the government's interest thought to be greater. *See id.* at 125, 144–61 (and cases cited therein); *see also United States v. Montoya de Hernandez*, 473 U.S. 531, 537–40, 105 S.Ct. 3304, 87 L.Ed.2d 381, 388–90 (1985) ("[N]ot only is the expectation of privacy less at the border ... the Fourth Amendment balance between the interest of the Government and the privacy right of the individual is also struck much more favorably to the Government at the border."); *Hudson v. Palmer*, 468 U.S. 517, 525–26, 104 S.Ct. 3194, 82 L.Ed.2d 393, 402–03 (1984) (holding that prisoners do not have a reasonable expectation of privacy in their cells).

In light of these authorities, Lewis contends the evidence could have properly been suppressed.[3] However, as the State observes, *Rochin* is distinguishable from the present case. In *Rochin*, the Supreme Court emphasized the fact-specific nature of its holding. *Rochin*, 342 U.S. at 174, 72 S.Ct. 205 ("We are not unmindful that

hypothetical situations can be conjured up, shading imperceptibly from the circumstances of this case and by gradations producing practical differences despite seemingly logical extensions.... On the facts of this case the conviction ... has been obtained by methods that offend the Due Process Clause."). Further, the Supreme Court found offensive not just the stomach pumping, but the entire course of the proceedings—the illegal entry into the defendant's home, the use of force to open his mouth, and the "forcible extraction of his stomach's contents." *Id.*, 342 U.S. at 172, 72 S.Ct. 205.

In the present case, Lewis concedes that the vehicle stop and the order for him to get out of the car were legal. *See Maryland v. Wilson*, 519 U.S. 408, 415, 117 S.Ct. 882, 137 L.Ed.2d 41, 48 (1997) (holding that an officer making a traffic stop may order passengers to exit the car pending completion of the stop). There was also testimony that the police and paramedics were motivated at least in part by the risk that Lewis could choke or suffer a heart attack or stroke from the cocaine. In contrast, there was no indication in *Rochin* that the officers were motivated by anything other than the desire to seize the evidence. While the doctor in *Rochin* was acting at the direction of police, Maples testified that he was acting on Lewis's behalf in an effort to save his life. Finally, there is testimony that police obtained a warrant before seizing the contents of Lewis's stomach, while in *Rochin* the police seized the capsules without a warrant. In short, the proceedings here do not

---

**3.** The primary thrust of Lewis's contention is that the evidence should be suppressed under *Rochin*. As mentioned, however, *Rochin* only discusses the Due Process Clause; it does not mention the Fourth Amendment as in *Schmerber*. Arguably, Lewis has not raised the issue of potential suppression under the

Fourth Amendment. Nevertheless, some of the Texas cases Lewis and the State cite were decided on Fourth Amendment grounds. Therefore, we will consider possible suppression of the evidence under the Fourth Amendment.

"shock the conscience" so as to implicate the substantive requirements of the Due Process Clause.

■ Further, Lewis's Fourth Amendment right to be free from unreasonable searches was not abridged. This case is closer to the situation in *Schmerber* than it is to that in *Winston*. First, the officers had probable cause to believe that Lewis was ingesting narcotics. When told he would be searched for weapons, Lewis put the material into his mouth and refused to spit it out. Various witnesses testified that they saw a substance resembling marihuana and another white powdery substance in Lewis's mouth and in the passenger's seat of Lewis's car.

Second, while there is little doubt that Lewis's dignitary interest in his own bodily integrity was to some extent violated, the interests of the community in preserving the evidence were also great. In *Schmerber*, the Supreme Court noted that a blood sample provides a highly effective means of determining the degree to which a person is intoxicated and that the percentage of alcohol in the blood diminishes shortly after drinking stops. *Schmerber*, 384 U.S. at 770–71, 86 S.Ct. 1826. This factor presented an exigency that substituted for the requirement of a warrant. *Id.*

Similarly, in the present case, Maples testified that the stomach empties within an hour and a half, meaning the risk of losing the evidence would increase the longer the police waited. Further, unlike in *Schmerber*, there was testimony that Lewis could suffer a heart attack or stroke if his stomach was not cleared. Thus, the police had added justification for proceeding without first obtaining a warrant.

Third, the gastric lavage procedure was conducted by a doctor in a hospital setting according to accepted medical practices. Finally, there was testimony that police

first obtained a warrant before seizing the evidence.

Lewis cites *Oviedo v. State*, 767 S.W.2d 214 (Tex.App.—Corpus Christi 1989, no pet.), in which the court of appeals upheld the warrantless pumping of the defendant's stomach after he chewed and swallowed a baggie of cocaine. However, that case supports our conclusion that the search in the present case was reasonable. As in *Oviedo*, the police were motivated at least in part by the desire to save Lewis's life and that exigency provided the basis for the warrantless removal of his stomach's contents. As in *Oviedo*, a doctor treated Lewis in a hospital according to accepted medical practices.

While it is true that, unlike the defendant in *Oviedo*, Lewis did not consent to the treatment, it is also true that the defendant in *Schmerber* did not consent either. Nevertheless, the Supreme Court did not consider this as a factor in weighing the reasonableness of the search under the Fourth Amendment, though it did note that the defendant's refusal to consent did not offend the sense of justice required by *Rochin* for compliance with the Due Process Clause. *Schmerber*, 384 U.S. at 760, 86 S.Ct. 1826.

Lewis also cites *Marmolejo v. State*, 743 S.W.2d 669 (Tex.App.—El Paso 1987, pet. ref'd), but that case is distinguishable on its facts. In *Marmolejo*, after the defendant was seen swallowing a yellow balloon, which police suspected was full of heroin, the officers first obtained a warrant before taking the defendant to the hospital to have his stomach evacuated. *Id.* However, in the present case, Lewis did not swallow a balloon, but swallowed the drugs themselves. Thus, unlike in *Marmolejo*, the requirement of a warrant was obviated by the exigencies of protecting Lewis's health and preserving the evidence.

Lewis contends the police could have used other, less invasive procedures to obtain the evidence. He cites *Hernandez v. State*, 548 S.W.2d 904, 905 (Tex.Crim.App. 1977), in which the police saw the defendant put something in his mouth, subdued him, and choked him until he spit out four balloons of heroin. Despite the appellant's reliance on *Rochin* and several California cases, the Texas Court of Criminal Appeals held that the officers had the right to take reasonable measures to ensure the evidence was not destroyed and that reasonable physical contact is one of these measures. *Id.*

The court did not say, however, that physical contact is the only reasonable measure to be used to preserve evidence. In *Hernandez*, the balloons were self-contained and there was no indication the defendant had swallowed them. Here, the police were confronted with loose drugs and packaging, which Lewis was chewing and swallowing. Under these circumstances, Lewis did not receive ineffective assistance of counsel because the evidence was not subject to suppression under either the Due Process Clause or the Fourth Amendment.

■ Lewis next contends there was legally and factually insufficient evidence to convict him of tampering with evidence. In reviewing the legal sufficiency of the evidence, we look to see whether after viewing all of the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560, 573 (1979); *Lane v. State*, 933 S.W.2d 504, 507 (Tex.Crim.App.1996). We must evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible. *John-*

*son v. State*, 871 S.W.2d 183, 186 (Tex. Crim.App.1993).

■ Under a factual sufficiency analysis, we examine whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex.Crim.App.2000); *see also Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim. App.1996). Accordingly, we reverse the fact finder's determination only to "arrest the occurrence of a manifest injustice." *Johnson*, 23 S.W.3d at 12. Otherwise, we must give due deference to the fact finder's determinations concerning the weight and credibility of the evidence. *Id.* at 9.

As alleged in the indictment, the elements of tampering with evidence are that Lewis (1) destroyed, concealed, or altered the cocaine; (2) with intent to impair its verity or availability as evidence in an investigation or official proceeding; and (3) knowing that an investigation or official proceeding was pending. *See* TEX. PEN. CODE ANN. § 37.09(a)(1) (Vernon Supp. 2001). Lewis contends the evidence is insufficient because (1) the cocaine used as evidence to convict him of possession of cocaine was the same cocaine used as evidence to convict him of tampering with evidence; (2) all of the cocaine was collected, measured, and tested; (3) the evidentiary value of the cocaine was not compromised by the fact that his stomach had to be evacuated; and (4) his action in swallowing the cocaine did not lead to a charge of possessing a lesser amount of cocaine.

He cites *Spector v. State*, 746 S.W.2d 945, 945 (Tex.App.—Austin 1988, no pet.), in which the state alleged the defendant "did destroy a thing, to wit: marihuana cigarette with intent to impair its availabil-

ity as evidence." The evidence showed that police found a marihuana cigarette in the defendant's car, but that the defendant grabbed the cigarette, tore it in two, and threw the pieces toward a ditch. *Id.* at 946. Nevertheless, the police were able to recover the marihuana and use it to convict the defendant of possession of marihuana. *Id.*

The court of appeals held that something is destroyed within the meaning of the statute when its evidentiary value is destroyed and that form changes without a loss of evidentiary value are either attempts to destroy or alterations. *Id.* Thus, because the defendant was charged with destroying the evidence, her conviction was reversed and she was acquitted. *Id.*

In *Hollingsworth v. State,* 15 S.W.3d 586, 595 (Tex.App.—Austin 2000, no pet.), the court of appeals adopted a dictionary definition of "conceal," i.e., "[t]o hide or keep from observation, discovery, or understanding; keep secret," in analyzing the sufficiency of the evidence to prove the defendant concealed crack cocaine in his mouth. In that case, the police were investigating reports of a knife fight in a high crime area; saw the defendant, who fit the description of one of the perpetrators, walking in the area; followed him, ordered him to stop; and watched him duck behind a dumpster and spit out two off-white, cube-shaped objects. *Id.* at 589–90. Citing testimony that persons in possession of crack cocaine commonly carry it in their mouths, the court of appeals held there was no evidence to show that the defendant concealed the cocaine in his mouth with the intent to impair its availability as evidence. *Id.* at 595.

In *Pannell v. State,* 7 S.W.3d 222, 223 (Tex.App.—Dallas 1999, pet. ref'd), the defendant threw a marihuana cigarette and shook a baggie of an unidentified sub-stance from his car window as he was being stopped for speeding. The court of appeals held the evidence was insufficient to convict him of tampering with evidence by destroying, altering, or concealing because he was not being investigated for possession of marihuana when he threw the evidence from his car. *Id.* at 223–24.

■ In the present case, Lewis was charged with destroying, concealing, or altering the cocaine, unlike the defendant in *Spector* who was charged only with destroying the evidence. As the State concedes, because the evidentiary value of the cocaine was not lost, the evidence in the present case was not destroyed. However, the evidence was sufficient to prove that Lewis concealed the cocaine. By showing that Lewis put the cocaine in his mouth and swallowed it, the State proved that he hid it or kept it from observation according to the *Hollingsworth* court's definition of "conceal."

Lewis's broader contention—that he cannot be convicted of tampering with evidence when the evidentiary value of the evidence is not lost—is answered by the language of the statute. As mentioned previously, the Penal Code prohibits the concealing of evidence with the intent to impair its verity or availability as evidence in an investigation or official proceeding. *See* Tex. Pen.Code Ann. § 37.09(a)(1). The statute does not require that the evidence be made useless to the investigation or proceeding by its concealment; rather, it requires that the defendant have acted with the intent to impair its usefulness in the investigation or the proceeding.

The evidence was also sufficient to show that Lewis concealed the evidence knowing that an investigation was pending because the State showed he refused to spit out the cocaine or otherwise allow its removal after being ordered to do so. *Pannell* is

thus distinguishable because in *Pannell* the defendant disposed of the evidence before police were investigating him for possession of marihuana.

Finally, the evidence was sufficient to prove that by putting the cocaine in his mouth and refusing to spit it out, Lewis was concealing it with the intent to impair its verity or availability in the investigation and at trial. *Hollingsworth* is distinguishable because in *Hollingsworth* the evidence showed that the defendant was carrying the crack cocaine in his mouth not because he intended to impair its availability as evidence, but because, the evidence showed, it is common for persons in possession of crack cocaine to carry it there. Here a rational jury could have concluded beyond a reasonable doubt that Lewis concealed the cocaine in his mouth and stomach in an effort to impair its availability as evidence.

Thus, the evidence was legally sufficient to convict Lewis of tampering with evidence. The evidence was also factually sufficient, in that the proof of his guilt is not so obviously weak as to undermine confidence in the jury's verdict.

The judgment is affirmed.