**Opinion filed April 14, 2011**



# In The

# Eleventh Court of Appeals

_____

## Nos. 11-09-00317-CR & 11-09-00318-CR

_____

## ROBERT KEITH EVANOFF, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 90th District Court**

**Stephens County, Texas**

**Trial Court Cause Nos. F31959 & F31960**

## M E M O R A N D U M   O P I N I O N

The jury convicted Robert Keith Evanoff of tampering with physical evidence[1] and of possession of less than one gram of a controlled substance.[2]  Evanoff's punishment was assessed at sixty years confinement and a fine of $10,000 on the tampering conviction and at twenty years confinement and a fine of $10,000 on the possession conviction.  We affirm.

---

[1]No. 11-09-00317-CR.

[2]No. 11-09-00318-CR.

## I. *Background Facts*

On the evening of April 12, 2008, Breckenridge Police Department Sergeant Jeff Baker noticed a vehicle with a driver's side headlamp that was not working. Sergeant Baker activated his emergency lights and followed the vehicle. It pulled into the carport of Evanoff's residence.

Sergeant Baker approached the driver's side door. He recognized Evanoff. Sergeant Baker and Evanoff knew each other and addressed each other by their first names. Sergeant Baker told Evanoff that his driver's side headlamp was out. He walked to the front of the vehicle and asked Evanoff to turn the vehicle's lights back on, at which time he confirmed that both the high and low beams of the driver's side headlamp were out. Evanoff explained that he had hit a deer.

Evanoff got out of the vehicle to talk with Sergeant Baker. Sergeant Baker asked for Evanoff's driver's license. Evanoff complied with a license that had expired a month earlier. Evanoff claimed that he had tried to renew it several times at the DPS office but had been unable to do so. While Sergeant Baker and Evanoff were talking, a female passenger got out of the vehicle, walked around the front, and joined them by the driver's side of the vehicle.

Sergeant Baker believed that Evanoff was under the influence of an illegal substance. He testified that Evanoff appeared nervous and unsteady and was talking rapidly. Sergeant Baker had talked with Evanoff before and knew that Evanoff normally did not talk rapidly. In addition, Sergeant Baker considered the passenger's behavior strange and thought that it might be a distraction.

Sergeant Baker asked Evanoff if he was in possession of an illegal substance. Evanoff responded that he was not "too far out of line" and that he was not "tearing up the streets of [Sergeant Baker's] precious little town." Sergeant Baker continued to ask Evanoff if he was in possession of an illegal substance, to which Evanoff eventually replied, "I might." Evanoff told Sergeant Baker, "I might be holding something you might not be too proud of." Evanoff further indicated that he had hypodermic needles and syringes in the trunk of his car because he was tired of tearing up his arm using old needles and syringes. Based on this information, Sergeant Baker also suspected that Evanoff was in possession of drug paraphernalia.

Sergeant Baker told Evanoff that he would give him a warning on his broken headlamp. Evanoff asked Sergeant Baker if he wanted the needles and syringes. Evanoff reached into the vehicle to open the trunk. At the same time, he turned off his vehicle's lights. To calm Evanoff

down, Sergeant Baker indicated that he would also give him a warning on the expired driver's license.

Sergeant Baker continued to ask if Evanoff was in possession of a controlled substance. Evanoff replied that he had "three dimes" in his pocket that he was about to do. Based on his training and experience, Sergeant Baker knew that "three dimes" meant three baggies of a controlled substance. Sergeant Baker asked Evanoff to take the baggies out of his pocket and to place them on the trunk of the vehicle. Evanoff complied. Sergeant Baker confirmed that the substance was an illegal narcotic, which he believed to be cocaine.

Sergeant Baker told Evanoff to turn around and put his hands behind his back. Evanoff grabbed the baggies and took off, telling Sergeant Baker to "kick his ass." Sergeant Baker used his pepper spray to subdue Evanoff, but in the process was himself sprayed. Sergeant Baker called for backup. He also followed Evanoff around the vehicle and the house trying to put him under arrest. While Sergeant Baker was following Evanoff, the female passenger was walking around Evanoff's vehicle looking down at the ground.

With the help of two other officers, Sergeant Baker managed to subdue Evanoff. Evanoff claimed to have swallowed the baggies. Deputy Caleb Hodges eventually found them lying on the ground by the front of Evanoff's vehicle. Deputy Hodges testified that they were covered with what appeared to be saliva. Evanoff was then read his rights. The baggies were sent to the DPS Crime Lab in Abilene, where tests revealed that they contained .51 grams of cocaine.

## II. *Issues*

In his first and second issues, Evanoff argues that the evidence was legally and factually insufficient to support his conviction of tampering with physical evidence. In his third issue, he maintains that the trial court abused its discretion by denying his motion to suppress. In his fourth issue, Evanoff argues that the trial court erred by failing to instruct the jury on the law applicable to the voluntariness of his statements to Sergeant Baker. In his fifth issue, he contends that the trial court erred by failing to pronounce sentence and to grant Evanoff the right of allocution. In his sixth, seventh, and eighth issues, he argues that he received ineffective assistance of counsel because trial counsel failed to object to evidence that violated his right to confrontation, failed to request an instruction in the charges on the law applicable to the case

3

concerning the voluntariness of his statements, and failed to object to the denial of his statutory right of allocution.

### III. *Sufficiency of the Evidence*

In his first and second issues, Evanoff argues that the evidence is legally and factually insufficient to support his conviction of tampering with physical evidence. Specifically, Evanoff contends that the evidence presented at trial was insufficient to show that he intentionally or knowingly concealed the cocaine or that he intended to impair its availability as evidence.

We note at the outset of our analysis that the Texas Court of Criminal Appeals has now held in *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010), that there is "no meaningful distinction between the *Jackson v. Virginia*[3] legal-sufficiency standard and the *Clewis*[4] factual-sufficiency standard"; that the *Jackson v. Virginia* standard is the "only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt"; and that "[a]ll other cases to the contrary, including *Clewis*, are overruled." *Brooks*, 323 S.W.3d at 895, 902, 912 (footnotes added). Accordingly, a challenge to the factual sufficiency of the evidence is no longer viable. We also note that Evanoff did not have the benefit of the opinion in *Brooks* when this case was briefed. We will review Evanoff's factual sufficiency challenge under the legal sufficiency standard set forth in *Jackson v. Virginia*. Under this standard, we must review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307; *Brooks*, 323 S.W.3d at 899.

At trial, Sergeant Baker testified that Evanoff pulled the baggies of cocaine out of his pocket and placed them on the trunk of the car. Sergeant Baker told Evanoff to turn around and to put his hands behind his back. Evanoff then grabbed the cocaine and took off, telling Sergeant Baker to "kick his ass." After the police subdued Evanoff, Deputy Hodges found the baggies of cocaine under the carport in front of Evanoff's vehicle. The video of the stop was admitted into evidence and confirms this sequence of events.

Tampering with physical evidence is defined as "knowing that an offense has been committed, [the accused] alters, destroys, or conceals any record, document, or thing with intent

---

[3]*Jackson v. Virginia*, 443 U.S. 307 (1979).

[4]*Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996).

to impair its verity, legibility, or availability as evidence in any subsequent investigation of or official proceeding related to the offense." TEX. PENAL CODE ANN. § 37.09(d)(1) (Vernon Supp. 2010). While "conceal" is not defined by the statute, courts have held it means to hide, to remove from sight or notice, or to keep from discovery or observation. *See Rotenberry v. State*, 245 S.W.3d 583, 588-89 (Tex. App.—Fort Worth 2007, pet. ref'd); *Hollingsworth v. State*, 15 S.W.3d 586, 595 (Tex. App.—Austin 2000, no pet.). The conduct need not result in the destruction or loss of the evidence; rather, the accused need only act with the intent to impair its verity or availability as evidence. *Lewis v. State*, 56 S.W.3d 617, 625 (Tex. App.—Texarkana 2001, no pet.).

In support of his argument that the evidence was insufficient to show that he intentionally and knowingly concealed the baggies of cocaine or that he intended to impair their availability as evidence, Evanoff cites *Hollingsworth*; *Spector v. State*, 746 S.W.2d 945 (Tex. App.—Austin 1988, no pet.); and *Stewart v. State*, 240 S.W.3d 872, 873 (Tex. Crim. App. 2007).

In *Hollingsworth*, a police officer responding to a report of a knife fight saw the defendant walking in an area known for drug trafficking. 15 S.W.3d at 589. Believing that the defendant had been involved in the fight, the officer asked him to stop. *Id*. at 589-90. The defendant continued to walk away, ducking briefly behind a dumpster. *Id*. at 590. Another officer saw the defendant spit out two off-white, cube-shaped objects behind the dumpster. The objects were crack cocaine. *Id*. The defendant was arrested and later convicted of tampering with physical evidence. *Id*. at 590-91. He argued that the evidence was insufficient to show that he concealed the crack cocaine with the intent to impair its availability as evidence. *Id*. at 594. The evidence presented at trial showed that it was common practice for users to carry crack cocaine in their mouths to keep it from public view. *Id*. at 595. The Austin Court of Appeals likened this practice to that of carrying the keys of a stolen car in one's pocket. *Id*. The court pointed out there was no evidence that the defendant placed the cocaine in his mouth upon seeing the officers in an effort to hide it from them. *Id*. In fact, he spit the cocaine out behind a dumpster, thereby exposing it to the officers' view. *Id*. For these reasons, the court held that the evidence was insufficient to show that the defendant concealed the cocaine with the intent to impair its availability as evidence. *Id*.

This court has chosen not to follow *Hollingsworth*. *See Collier v. State*, 254 S.W.3d 576, 578 (Tex. App.—Eastland 2008) (reasoning that a jury faced with the facts in *Hollingsworth*

5

could have found intent to impair the cocaine's availability based on the defendant's evasion of the officers after being ordered to stop and his spitting out the cocaine), *pet. dism'd-improvidently granted*, 284 S.W.3d 866 (Tex. Crim. App. 2009). However, even under *Hollingsworth*, the present case is distinguishable. Here, there was evidence that, faced with arrest, Evanoff grabbed the baggies and took off, removing the cocaine for a period of time from Sergeant Baker's observation. Thus, the jury had before it evidence from which it could find that Evanoff intentionally and knowingly concealed the cocaine. *See Hollingsworth*, 15 S.W.3d at 595 (using dictionary definition of "conceal" as meaning "[t]o hide or keep from observation, discovery, or understanding; keep secret").

The other cases cited by Evanoff are also distinguishable. In *Spector*, the defendant was convicted of destroying a marihuana cigarette with the intent to impair its availability as evidence. 746 S.W.2d at 945. Specifically, the defendant tore the marihuana cigarette in two and threw the pieces into a ditch. *Id.* at 946. The trooper managed to recover a portion of the cigarette, although part of its contents was lost. *Id.* The recovered portion of the cigarette was used to convict the defendant of possession of marihuana. *Id.* The court held that the evidence was insufficient to support the defendant's conviction of destroying the cigarette because the evidentiary value of the cigarette was not so lost as to be considered destroyed. *Id.* In the present case, Evanoff was convicted of concealing the baggies of cocaine with the purpose of impairing their availability as evidence. The holding in *Spector* with respect to the destruction of evidence is not, therefore, determinative. *See Collier*, 254 S.W.3d at 578. Moreover, the fact that Deputy Hodges eventually found the baggies on the ground under the carport is not at odds with the jury's finding that Evanoff intentionally or knowingly concealed the cocaine. *See Lewis*, 56 S.W.3d at 625 ("The statute does not require that the evidence be made useless to the investigation or proceeding by its concealment; rather, it requires that the defendant have acted with the intent to impair its usefulness in the investigation or the proceeding.").

Lastly, in *Stewart*, the defendant was a police officer convicted of tampering with evidence after returning some marihuana that he had confiscated from a prospective confidential informant. 240 S.W.3d at 873. The Court of Criminal Appeals held that the evidence presented at trial was insufficient to show that, by returning the marihuana, the defendant intended to impair its availability as evidence as required by Section 37.09. *Id.* at 873-74. Evanoff correctly cites this case for the proposition that the State must prove that a defendant charged under

Section 37.09 acted with intent to impair some evidence's availability. Evanoff argues that the evidence of such intent was lacking in his case as the cocaine was eventually found "in the carport of his house *in plain view* and left there for the officers to recover." However, the fact that Evanoff was ultimately unsuccessful in impairing the availability of the cocaine as evidence does not negate his intent to do so, which a jury could find in his grabbing the cocaine from the trunk of the car when faced with arrest. *See Lewis*, 56 S.W.3d at 625.

Thus, viewing the evidence in the light most favorable to the verdict, a rational trier of fact could have found that Evanoff intentionally and knowingly concealed the cocaine with the intent to impair its availability as evidence when, after having revealed the cocaine to Sergeant Baker and being then subject to arrest, he grabbed it from the trunk of the car and took off, thereby removing the cocaine from Sergeant Baker's observation. The evidence was sufficient to support his conviction under Section 37.09(d)(1). Evanoff's first and second issues are overruled.

IV. *Motion to Suppress*

In his third issue, Evanoff argues that the trial court abused its discretion by denying his motion to suppress based on lack of reasonable suspicion. While he does not dispute the initial basis for the traffic stop, Evanoff contends that, once Sergeant Baker determined that his vehicle's headlamp was not working and that his driver's license had expired, reasonable suspicion was required to detain him further.

We review the trial court's denial of a motion to suppress for abuse of discretion. *Oles v. State*, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999). The trial court abuses its discretion when its decision is so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992). Because the trial court is the exclusive factfinder, we review evidence brought forward at the suppression hearing in the light most favorable to the trial court's ruling. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). Where the trial court makes no explicit findings of historical fact, we view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact. *Carmouche*, 10 S.W.3d at 328.

Police officers may stop and detain a person if they have a reasonable suspicion that a traffic violation is in progress or has been committed. *Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992). A traffic stop is a detention and must be reasonable under the United

States and Texas Constitutions. *See Davis v. State*, 947 S.W.2d 240, 245 (Tex. Crim. App. 1997); *Caraway v. State*, 255 S.W.3d 302, 307 (Tex. App.—Eastland 2008, no pet.). To be reasonable, a traffic stop must be temporary and last no longer than necessary to effectuate the purpose of the stop. *Florida v. Royer*, 460 U.S. 491, 500 (1983); *Davis*, 947 S.W.2d at 245. Reasonableness is measured in objective terms by examining the totality of the circumstances. *Ohio v. Robinette*, 519 U.S. 33, 39 (1996); *Spight v. State*, 76 S.W.3d 761, 765 (Tex. App.— Houston [1st Dist.] 2002, no pet.). An investigative stop that is reasonable at its inception may violate the Fourth Amendment because of excessive intensity or scope. *Davis*, 947 S.W.2d at 243 (citing *Terry v. Ohio*, 392 U.S. 1 (1968)).

During a routine traffic stop, an officer may check for outstanding warrants and demand identification, a valid driver's license, and proof of insurance from the driver. *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004); *Caraway*, 255 S.W.3d at 307. If, during that investigation, an officer develops reasonable suspicion that another violation has occurred, the scope of the initial investigation expands to include the new offense. *Goudeau v. State*, 209 S.W.3d 713, 719 (Tex. App.—Houston [14th Dist.] 2006, no pet.). When the reason for the stop has been satisfied, the stop may not be used as a "fishing expedition for unrelated criminal activity." *Davis*, 947 S.W.2d at 243 (quoting *Robinette*, 519 U.S. at 41 (Ginsburg J., concurring)). Once the officer concludes the investigation of the conduct that initiated the stop, continued detention of a person is permitted only if there is reasonable suspicion to believe that another offense has been or is being committed. *Id.* at 245.

Reasonable suspicion must be founded on specific, articulable facts which, when combined with rational inferences from those facts, would lead the officer to conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010). While nervousness alone is not sufficient to establish reasonable suspicion, it is a factor that may be considered. *State v. Wilson*, 295 S.W.3d 759, 762 (Tex. App.—Eastland 2009, no pet.). Whether the totality of the circumstances is sufficient to support an officer's reasonable suspicion is a legal question that we review de novo. *Madden v. State*, 242 S.W.3d 504, 511 (Tex. Crim. App. 2007).

Sergeant Baker testified that he initiated the traffic stop because the driver's side headlamp of Evanoff's vehicle was out. After verifying that the headlamp was out, Sergeant Baker asked to see Evanoff's driver's license, and Evanoff told him that it had expired. Evanoff

does not challenge the propriety of Sergeant Baker's initial actions. He argues, however, that when Sergeant Baker questioned him as to whether he was in possession of a controlled substance, Sergeant Baker exceeded the scope of the initial investigation.

The evidence shows that after Sergeant Baker asked to see Evanoff's driver's license, at approximately a minute into the stop, he began to question Evanoff as to whether he was in possession of a controlled substance. From that point until Evanoff took the cocaine out of his pocket, Sergeant Baker's investigation focused on whether Evanoff was in possession of drug paraphernalia or of a controlled substance. This new line of questioning exceeded the scope of the initial traffic investigation, and reasonable suspicion that another violation had occurred was required. *See Davis*, 947 S.W.2d at 243; *Goudeau*, 209 S.W.3d at 719.

At the suppression hearing, Sergeant Baker testified that Evanoff's nervousness, his rapid talking, and the passenger's decision to get out of the vehicle and walk around to join them, led him to suspect that Evanoff might be under the influence of a controlled substance. Sergeant Baker had known Evanoff prior to the stop. He testified that he had spoken with Evanoff on other occasions and that Evanoff did not always talk rapidly. On those occasions when Evanoff did talk rapidly, Sergeant Baker testified that he "thought [that] he was under the influence of something."

The DVD taken of the stop was admitted at the suppression hearing. A trial court's determination of historical facts based on a videotape recording is reviewed under a deferential standard. *Carter v. State*, 309 S.W.3d 31, 40 (Tex. Crim. App. 2010). We have reviewed that video ourselves. The video and testimony provided the trial court with sufficient information to inform its exercise of discretion, and no error has been shown in the trial court's decision to deny the motion to suppress. Evanoff's third issue is overruled.

## V. *Instructions on Voluntariness*

In his fourth issue, Evanoff argues that the trial court erred by failing to submit jury instructions on the voluntariness of his statements to Sergeant Baker. Evanoff admits that he did not request a jury instruction on voluntariness. Nevertheless, he contends that the trial court was required to submit an instruction on the law applicable to the case under TEX. CODE CRIM. PROC. ANN. art. 38.22, §§ 6, 7 (Vernon 2005 ). When the defendant does not present a proposed jury instruction at trial, any potential error in the charge is reviewed only for egregious harm. *Oursbourn v. State*, 259 S.W.3d 159, 174 (Tex. Crim. App. 2008).

Article 38.22, Section 6, provides a general instruction that asks the jury to determine whether a defendant's statement was made under voluntary conditions. *Oursbourn*, 259 S.W.3d at 173. This section applies only "where a question is raised as to the voluntariness of a statement of an accused." Article 38.22, § 6. The Texas Court of Criminal Appeals has held that a "question is raised" when the trial court is notified by the parties or raises on its own an issue about the voluntariness of a statement. *Oursbourn*, 259 S.W.3d at 175. Once a question is raised, the trial court must hold a hearing outside of the presence of the jury to decide whether the defendant's statement was voluntary. *Id.* at 175. The trial court must make written findings of fact and conclusions of law in support of its ruling. *Id.* at 175 n.55. If the trial court finds that the statement was voluntary, it will be admitted, and the defendant may offer evidence before the jury that the statement was not, in fact, voluntary. *Id.* at 175. If the defendant does so, the trial court must give the jury a voluntariness instruction. *Id.*

Evanoff does not point to any place in the record where a question was raised as to the voluntariness of his statements. The trial court did not hold a hearing on the voluntariness of his statements, and nothing in the record shows that Evanoff ever requested a hearing. Evanoff's motion to suppress makes no mention of Article 38.22. The trial court did hold a hearing on Evanoff's motion to suppress, but it does not appear that the parties litigated whether Evanoff's statements were voluntary under Section 6. The record contains no written findings of fact or conclusions of law in support of any ruling on voluntariness, as would be required by the statute. *See Oursbourn*, 259 S.W.3d at 175 n.55 ("The need for written findings [of fact] should alert the parties and trial judge to the need for a general voluntariness jury instruction."). Finally, no evidence was presented to the jury that Evanoff's statements were not voluntary.

An appeals court may not overturn a trial court's decision on a legal theory not presented to the trial court. *Vasquez v. State*, 225 S.W.3d 541, 543 (Tex. Crim. App. 2007). Because there is no indication that the parties ever raised a question as to the voluntariness of Evanoff's statements or actually litigated those statements, we cannot say that the trial court erred by failing to submit an instruction to the jury under Section 6.

Article 38.22, section 7, provides for a jury instruction to determine if the defendant was adequately warned of his rights and knowingly and intelligently waived those rights in cases where the defendant made a statement as a result of a custodial interrogation. For the purposes of this section, four general situations may constitute custody: (1) the suspect is physically

deprived of his freedom of action in any significant way; (2) law enforcement officers tell the suspect he is not free to leave; (3) law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted; and (4) there is probable cause to arrest the suspect, and law enforcement officers do not tell the suspect he is free to leave. *Gardner v. State*, 306 S.W.3d 274, 294 (Tex. Crim. App. 2009). To determine whether a suspect is in custody, the question is whether, under the facts and circumstances of the case, a reasonable person would have felt that he or she was not at liberty to terminate the interrogation and leave. *Nguyen v. State*, 292 S.W.3d 671, 678 (Tex. Crim. App. 2009). An instruction is required when there is a genuine factual dispute regarding: (1) law enforcement's compliance with the statutory warnings under TEX. CODE CRIM. PROC. ANN. art. 15.17 (Vernon Supp. 2010) and Article 38.22 and (2) the voluntariness of the defendant's waiver of his rights. *Oursbourn*, 259 S.W.3d at 176. To demonstrate that a genuine factual dispute exists, "[t]he defendant must offer evidence that, if credited, would create a reasonable doubt as to a specific factual matter essential to the voluntariness of the statement." *See id*. at 176-77. If there is no disputed factual issue, the legality of the conduct is determined by the trial court alone as a question of law. *See id*. 176-78. The procedures for obtaining a jury instruction under Article 38.22, section 7 are the same as those under Section 6, including the requirements of a hearing outside of the presence of the jury and the entry of written findings. *Id*. at 176.

Evanoff's motion to suppress did not raise the issue of compliance with *Miranda*[5] or the statutory warnings under Article 38.22, but the parties addressed the issue of compliance with *Miranda* at the hearing on the motion to suppress, although they made no mention of Article 38.22. Sergeant Baker testified at the suppression hearing that, after subduing Evanoff, he asked him where the cocaine was before notifying him of his *Miranda* rights. Evanoff argued that the trial court should suppress "the statements, specifically the statement of 'where is the dope.' He said he swallowed it. I think that's most certainly an interrogating questioning that was asked when he was lying on his stomach in handcuffs, and they could have Mirandized him before that."

Assuming that the issue was adequately brought to the attention of the trial court, the evidence before the jury did not present a genuine factual dispute as required to obtain an instruction. During the State's direct examination, Sergeant Baker stated that the police provided

---

[5] *Miranda v. Arizona*, 384 U.S. 436 (1966).

11

Evanoff with *Miranda* warnings after they brought him to the police cruiser. The DVD of the stop was played for the jury. Approximately sixteen minutes into the DVD, the police provided Evanoff with *Miranda* warnings after they brought him to the police cruiser. Thus, the parties generally agreed on when *Miranda* warnings were provided. The evidence presented to the jury did not provide a genuine factual dispute on this issue, and the legality of the conduct was to be determined by the trial court alone as a matter of law. *See Oursbourn,* 259 S.W.3d at 176-78 (providing in the context of an instruction under TEX. CODE CRIM. PROC. ANN. art. 38.23 (Vernon 2005) that "if there is no disputed factual issue–if there is a video definitively showing that the officer did or did not hold a gun to the defendant's head–the legality of the conduct is determined by the trial judge alone, as a question of law. The legal question would never go to the jury.").

Accordingly, the trial court did not err by failing to provide a jury instruction under Article 38.22, section 7. Evanoff's fourth issue is overruled.

## VI. *Allocution*

In his fifth issue, Evanoff contends that the trial court erred by failing to pronounce sentence against him and by failing to grant him the right of allocution before pronouncing sentence.

Sentence shall be pronounced in the defendant's presence. TEX. CODE CRIM. PROC. ANN. art. 42.03 (Vernon Supp. 2010). The sentence is that part of the judgment that orders punishment be carried into execution in the manner prescribed by law. TEX. CODE CRIM. PROC. ANN. art. 42.02 (Vernon 2006). Before pronouncing sentence, the trial court shall ask the defendant whether he can provide any reason why sentence should not be pronounced against him. TEX. CODE CRIM. PROC. ANN. art. 42.07 (Vernon 2006). The only reasons which, if proven, would prevent the trial court from pronouncing sentence are (1) that the defendant has received a pardon from the proper authority, (2) that the defendant is incompetent to stand trial, and (3) that the defendant is not the person who was convicted. *Id.*

At the end of the punishment hearing, the trial court proceeded as follows:

THE COURT: Okay. For purposes of the record, in 31,959 and 31,960, the Court finds the enhancement paragraphs to have been proven, and hereby finds those to have been true.

Cause No. F31,960, the Court will impose a sentence of 20 years confinement in the Institutional Division of the Texas Department of Criminal Justice, assess a fine of $10,000 and all costs of court.

Cause No. F31,959, the Court is going to impose a punishment of 60 years confinement in the Institutional Division of the Texas Department of Criminal Justice, fine of $10,000 and all costs of court.

Mr. Evanoff, you are hereby remanded to the custody of the Sheriff of Stephens County, Texas, until he can obey and carry out the directions and instructions of this sentence. You will receive credit for time periods of detention as provided by law.

Evanoff argues that the trial court erred by not pronouncing sentence. He alleges that the trial court merely stated that it would "impose a sentence" in one case and "impose a punishment" in the other. Evanoff made no objection regarding this issue at trial, nor has he demonstrated how he was harmed by any error. Moreover, the trial court did in fact pronounce sentence. Within Evanoff's presence, the trial court announced the punishments assessed in each of the two cases and ordered Evanoff remanded to the custody of the Sheriff of Stephens County until the punishments could be executed. *See Casias v. State*, 503 S.W.2d 262, 264 (Tex. Crim. App. 1973) ("There appears no fixed or inflexible form to be used for the sentencing. The one mandatory provision is that it 'shall be pronounced in the presence of the defendant.'").

Second, Evanoff contends that the trial court erred by failing to grant him the right of allocution before pronouncing sentence. Again, Evanoff did not object to the trial court's omissions. Nor has he ever alleged the existence of any of the statutory reasons set out in Article 42.07 that would have prevented sentence from being pronounced. Thus, no error has been preserved for review. *Tenon v. State*, 563 S.W.2d 622, 623 (Tex. Crim. App. 1978); *Eisen v. State*, 40 S.W.3d 628, 637 (Tex. App.—Waco 2001, pet. ref'd). Evanoff's fifth issue is overruled.

## VII. *Ineffective Assistance of Counsel*

In Issues Six, Seven, and Eight, Evanoff argues that he was denied effective assistance of counsel when trial counsel failed to object to evidence that violated his right to confrontation, failed to request an instruction on the voluntariness of his statements to police, and failed to object to the denial of his right of allocution.

13

The standard for ineffective assistance of counsel is the same under the Texas and United States Constitutions. *Hernandez v. State*, 726 S.W.2d 53, 56-57 (Tex. Crim. App. 1986). A court must first determine whether Evanoff has shown that counsel's representation fell below an objective standard of reasonableness and, if so, determine whether there is a reasonable probability that the result would have been different but for counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Thompson v. State,* 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). The appellant has the burden of proving by a preponderance of the evidence that counsel was ineffective. *Thompson*, 9 S.W.3d at 813. In considering whether counsel's representation fell below an objective standard of reasonableness, a court must indulge in a strong presumption that counsel's actions fell within the range of reasonable professional assistance. *Id*.

A. *Right to Confrontation.*

In Issue Six, Evanoff argues that trial counsel provided ineffective assistance by failing to object to evidence that violated his right to confrontation. Evanoff argues that he should have had the opportunity to confront Ron Wagman, the case contact person from the DPS Crime Laboratory in Abilene who signed the Laboratory Submission Form for the evidence seized from Evanoff, because Wagman was involved in the chain of custody. To show ineffective assistance of counsel for failure to object during trial, Evanoff must show that the trial court would have committed error by overruling the objection. *Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996).

The Sixth Amendment to the United States Constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him. *Lopez v. State*, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000). A primary interest secured by the Confrontation Clause is the right of cross-examination. *Id*. The Confrontation Clause bars out-of-court testimonial statements by a witness unless the witness is unavailable to testify and the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 38 (2004).

While the United States Supreme Court has yet to define the outer boundaries of what constitutes a testimonial out-of-court statement, it has identified three kinds of statements that can be regarded as testimonial: (1) ex parte in-court testimony or its functional equivalent that declarants would reasonably expect to be used prosecutorially; (2) statements contained in formalized testimonial materials such as affidavits, depositions, prior testimony, or confessions;

14

and (3) statements that were made under circumstances that would lead an objective witness reasonably to believe that the statement would be available for use at a later trial. *Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010). Whether a particular out-of-court statement is testimonial is a question of law. *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008).

Evanoff cites two recent cases as extending the right to confrontation to documents such as the Laboratory Submission Form at issue here. In *Melendez-Diaz v. Massachusetts*, 129 S.Ct. 2527, 2532 (2009), the United States Supreme Court held that certificates of analysis attesting that a substance was cocaine were testimonial statements subject to the Confrontation Clause. The defendant was charged with distributing and trafficking cocaine. *Id*. at 2530. Under Massachusetts law, certificates of analysis were "prima facie evidence of the composition, quality, and net weight" of the substance. Id. at 2532 (quoting Mass. Gen. Laws, ch. 111, § 3). The Court held that these certificates were, in fact, affidavits made under circumstances that would lead an objective witness reasonably to believe that the statement would be available for use at a later trial. *Id*. The Court, however, was quick to emphasize that "it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device must appear in person as part of the prosecution's case." *Id*. at 2532 n.1. Instead, "gaps in the chain [of custody] normally go to the weight of the evidence rather than its admissibility." *Id*. (quoting *United States v. Lott*, 854 F.2d 244, 250 (7th Cir. 1988)).

In *Cuadros-Fernandez v. State*, 316 S.W.3d 645, 648 (Tex. App.—Dallas 2009, no pet.), the defendant was charged with the capital murder of a child under the age of six. DNA was swabbed from a cabinet door believed to have been involved in the murder. 316 S.W.3d at 652. The swab showed DNA from a major contributor matched the defendant's DNA profile. *Id*. The DNA report was admitted into evidence without the analyst who prepared the report having testified. *Id*. at 654. The Dallas Court of Appeals held that, because the analyst prepared the report with knowledge that it would be available for use at the defendant's trial and because the State used the report as a substitute for the analyst's testimony concerning the DNA testing, the report's admission violated the Confrontation Clause. *Id*. at 657-58.

As Evanoff admits, the Laboratory Submission Form at issue in this case merely went to establishing chain of custody. Breckenridge Chief of Police Larry Mahan testified that the form

"tells the DPS what we want done with this" and that the form "is required to get this into the door at the lab." The Laboratory Submission Form does not reveal the composition of the substance seized. It does not appear to make any statement that an objective witness reasonably would believe would be available for use at a later trial, except other than possibly for permissible chain of custody purposes. *See Langham*, 305 S.W.3d at 576. Thus, Evanoff has failed to prove that the trial court would have committed error on the basis of the Confrontation Clause by overruling an objection to the admission of the form without Wagman's testimony. Evanoff's sixth issue is, therefore, overruled.

### B. Instruction on the Voluntariness of Statements.

In his seventh issue, Evanoff argues that trial counsel was ineffective for failing to request an instruction regarding the voluntariness of Evanoff's statements to Sergeant Baker. As discussed above, Evanoff was not entitled to a jury instruction under either Section 6 or 7 of Article 38.22. Trial counsel's failure to request an instruction to which Evanoff was not entitled is not ineffective assistance. Evanoff's seventh issue is overruled.

### C. Right of Allocation.

In his eighth issue, Evanoff contends that trial counsel provided ineffective assistance by failing to object to the denial of his statutory right of allocution. As explained above, the trial court must ask the defendant if there is any reason why it should not pronounce sentence. There are only three reasons why sentence should not be pronounced: (1) that the defendant has received a pardon from the proper authority; (2) that the defendant is incompetent to stand trial; and (3) that the defendant is not the person who was convicted. Article 42.07.

If Evanoff's trial counsel had objected to the trial court's failure to grant Evanoff his right of allocution and if the trial court had sustained that objection, the trial court would have asked Evanoff if he had any reason why sentence should not be pronounced. As there are only three such reasons, and Evanoff has never shown that any of them are applicable to his case, the trial court would have proceeded to pronounce sentence.

However, Evanoff argues that trial counsel's failure to object harmed him because his failure might cause this court to hold that the issue has been waived. Even if trial counsel had objected, the trial court had overruled the objection, and this court was to sustain error and find harm, the remedy would be to reverse and remand the case for allocation and pronouncement of sentence. *See Tenon*, 563 S.W.2d at 624. Because Evanoff cannot show that any reason exists

16

why sentence should not be imposed, if we remanded the trial court would still simply proceed to pronounce his sentence. *See id.* ("Surely appellant would not have this court reverse this cause and order a new sentencing so that when the court asks her if she has anything to say why sentence should not be pronounced against her she can then answer 'Nothing.'").

Evanoff, therefore, has not shown that there is a reasonable probability that the result would have been different but for his trial counsel's failure to object to the denial of his statutory right of allocution. Evanoff's eighth issue is overruled.

## VIII. *Conclusion*

The judgment of the trial court is affirmed.


RICK STRANGE

JUSTICE


April 14, 2011

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strnge, J.