

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-14-00214-CR

DENNIS MAY, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 69th District Court
Dallam County, Texas
Trial Court No. 4354, Honorable Ron Enns, Presiding

February 5, 2015

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Appellant, Dennis May, appeals the trial court's judgment by which he was convicted of tampering with physical evidence and sentenced to four years' imprisonment.[1] On appeal, he challenges the sufficiency of the evidence to support said conviction. We will affirm.

---

[1] *See* TEX. PENAL CODE ANN. § 37.09(a)(1) (West Supp. 2014).

## Factual and Procedural History

Appellant and Louis Kelly were stealing the copper wire from the electric poles they were inspecting for Rita Blanca Electric Cooperative when Kelly was electrocuted. Either appellant or a passerby, at the behest of appellant, summoned assistance to the scene of the electrocution and the resulting fire.

Dallam-Hartley County EMS arrived on the scene, and so did Curtis Brown of the City of Dalhart Fire Department. Brown, a certified fire investigator, testified that, in his experience, a loose wire should be present at the scene of an electrocution. He asked appellant where the wire was, and appellant reported that he had knocked the wire off and away from the all-terrain vehicle (ATV) that Kelly had been driving when he was electrocuted, crumpled the wire up, and threw it over the fence. Deputy Kevin Martin of the Dallam County Sheriff's Office arrived at the scene and initially assessed the situation as an industrial accident. Appellant told Martin that, after Kelly was electrocuted, appellant knocked the wire off the ATV, balled it up, and threw it into the pasture.

After the ambulance left with Kelly, Brown stayed on the scene to further his investigation for his fire report. Brown was marking the scene when he located the wire that appellant reported as having been tossed over the fence. Instead of the single wire he expected to find as the one with which Kelly came in contact, Brown located multiple bundles of copper wire. Upon locating the multiple bundles of copper wire, Brown alerted Deputy Martin, who had left the scene and was at the hospital where Kelly had been transported, to the bundles of copper wire and voiced his suspicion that there was

a possible copper wire theft case. Brown photographed the bundles and marked their locations with paint and flags.

The sheriff's office began its investigation into Brown's suspicions by sending another deputy to accompany Brown to the scene to retrieve the copper wire bundles. When the two arrived at the scene, the paint markings and flags remained but the copper bundles were gone. The sheriff's office contacted appellant who admitted to having taken the copper wire bundles from the scene to Dumas. He met with deputies and turned over the bundles.

Standard of Review

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). "[O]nly that evidence which is sufficient in character, weight, and amount to justify a factfinder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction." *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring). We remain mindful that "[t]here is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by *Jackson*." *Id.* When reviewing all of the evidence under the *Jackson* standard of review, the ultimate question is whether the jury's finding of guilt was a rational finding. *See id.* at 906–07 n.26 (discussing Judge Cochran's dissenting opinion in *Watson v. State*, 204 S.W.3d

3

404, 448-50 (Tex. Crim. App. 2006), as outlining the proper application of a single evidentiary standard of review). "[T]he reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Id.* at 899.

## Applicable Law

The Texas Penal Code defines the offense of tampering with physical evidence with three elements: (1) knowing that an investigation or official proceeding is pending or in progress; (2) a person alters, destroys, or conceals any record, document, or thing; (3) with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding. *See* TEX. PENAL CODE ANN. § 37.09(a)(1); *Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014). "A person acts knowingly, or with knowledge, with respect . . . to circumstances surrounding his conduct when he is aware . . . that the circumstances exist." TEX. PENAL CODE ANN. § 6.03(b) (West 2011). In contrast, "[a] person acts intentionally, or with intent, with respect . . . to a result of his conduct when it is his conscious objective or desire to . . . cause the result." *See id.* § 6.03(a).

## Analysis

Appellant challenges the first and third elements: knowledge that an investigation or official proceeding regarding Kelly's electrocution was pending or in progress and intent to impair the availability of the copper wire as evidence in that investigation or official proceeding.

4

Knowledge that an Investigation Was Pending or in Progress

Appellant was charged with knowing that an investigation into the electrocution of Kelly "was pending or in progress." *Cf. Lumpkin v. State*, 129 S.W.3d 659, 663–64 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (addressing element when State only alleged that defendant knew investigation was "in progress").

Appellant was with Kelly when Kelly was electrocuted. The record reveals that appellant threw the copper wire bundles out into the pasture after Kelly was electrocuted, that fire investigator Brown located and encircled the locations of the copper wire bundles as they lay in the pasture, and that, later, appellant either remained at or returned to the scene and took the bundles from the pasture. From the record, it appears that appellant knew that an investigation into the electrocution death of Kelly was in progress, seeing as appellant was present at the scene when officers arrived and that it was appellant who either summoned the authorities or directed a good Samaritan who stopped at the scene to summon the authorities following the electrocution. So, when appellant first moved the wire bundles from the immediate vicinity of the electrocution to the nearby pasture, he knew that an investigation or official proceeding was, at least, pending. And, most certainly, after the fire and law enforcement authorities arrived, began their inquiry into the electrocution, located the copper wire bundles that appellant had thrown out into the field, and circled the bundles' locations in red paint, appellant knew that an investigation was underway into the electrocution death of Kelly. So, when appellant removed the marked and photographed bundles of wire from the scene altogether, certainly appellant knew that an investigation or official proceeding was pending or in progress.

5

Regardless of whether the two men had been stealing wire on the job, the record establishes that there was going to be or that there was an investigation into the electrocution as soon as Brown, whose job it is to investigate the incident and prepare a report, arrived at the scene. Further, the record suggests that the sheriff's office was also going to prepare a report on the electrocution. That discoveries at the scene changed the perception of the incident and the nature and course of the investigation does not change the fact that an official proceeding and investigation into the electrocution of Kelly had commenced when the fire and law enforcement officials were notified of the matter. And it was either appellant or a passerby acting at the behest of appellant who summoned officials.

Appellant points to testimony from Deputy Martin that, when Martin first arrived at the location, it was not a crime scene and that appellant never tried to hide anything that was relevant to the electrocution at the time Martin was at the scene. Appellant also relies on Martin's testimony that there was "really not an investigation" when he first arrived, that, upon officers' arrival, their first priority was to assist the injured Kelly. Martin testified that, shortly after the rescue efforts were continued in transport to the hospital, he thought that the authorities' goal at the scene of the electrocution was documentation of an industrial accident. Martin clarified, however, that, even before the men's copper wire activities were suspected, "there was an accident investigation." Viewed in a light most favorable to the jury's verdict, the evidence establishes that appellant knew that an investigation into Kelly's electrocution was pending or in progress.

<u>Intent to Impair Its Availability as Evidence</u>

What the two men were doing at the time Kelly was electrocuted was certainly relevant to the investigation into Kelly's electrocution. For instance, investigating officials needed to determine how Kelly was electrocuted to determine any criminal or civil liability, manner of death, any ongoing public safety concerns, etc. The record shows that appellant tossed the several bundles that the men had stored in or on their ATV into the pasture away from the immediate area surrounding the incident before officials arrived in response to the 911 call.

Appellant emphasizes that he did reveal to officials the location of the wire bundles and, ultimately, turned the bundles that he removed from the scene over to officials. We note, while it is true that appellant gave information regarding the wire to officials, that appellant was less than forthcoming even when, at the scene of the electrocution, he admitted to having tossed the wire over the fence. When fire investigator Brown first asked about the wire in relation to Kelly's electrocution, appellant responded that he had knocked *it* off, crumpled *it* up, and tossed *it* over the fence; appellant did not admit to having tossed over the fence the several bundles of copper wire the men had taken while charged with inspecting electric poles and, instead, left Brown with the impression that it was *the* wire responsible for the electrocution that had been tossed into the pasture. From this, the jury could have concluded that he did not want officials to find any of the wire that would show that the two men were taking copper wire at the time Kelly was electrocuted. When called on later that day to account for the wire that was no longer at the scene, appellant explained to the officers that he had hoped to hide the wire from his boss. Certainly, his

7

explanation is relevant to intent, but it is not conclusive. Further, it is clear from his explanation and from the remainder of the record that he removed the wire bundles in an effort to avoid discovery during the investigation that he and Kelly were stealing copper wire. That appellant admitted later to having thrown the copper wire bundles out into the pasture and, later still, admitted to having taken the bundles from the scene does not negate the intent that he had *at the moment* he removed the bundles. *See Lewis v. State*, 56 S.W.3d 617, 625 (Tex. App.—Texarkana 2001, no pet.) (observing that Section 37.09(a)(1) "does not require that the evidence be made useless to the investigation or proceeding by its concealment; rather, it requires that the defendant have acted with the intent to impair its usefulness in the investigation or the proceeding").

Tossing the copper wire away from the immediate vicinity and leading officials to perceive the incident as a simple industrial accident—as they initially did—could serve to limit appellant's involvement in the investigation and serve to help him escape any type of repercussions for having been involved in taking the copper wire. By tossing the bundles away from the immediate vicinity, appellant was attempting to hide the fact that the two men had been stealing copper wire from the poles they were inspecting; in other words, he was attempting to impair the availability of the copper wire bundles as evidence for consideration in the ensuing investigation into Kelly's electrocution, that is, to alter the conclusions drawn during the investigation by eliminating the wire bundles from consideration by investigating officials.

Again, what was happening immediately before, during, and after the moment Kelly was electrocuted would be relevant to the investigation into the matter. Martin

8

testified that the wire bundles were "important" to any investigation. Based on evidence in the record, the jury could have reasonably concluded that appellant attempted to remove the copper wire bundles from the scene to impair their availability as evidence and thereby alter the nature of the investigation that would surely follow and influence the conclusions yielded by the investigation.

We overrule appellant's point of error challenging the sufficiency of the evidence of two elements of the offense.

## Conclusion

Having overruled appellant's sole point of error, we affirm the trial court's judgment of conviction. *See* TEX. R. APP. P. 43.2(a).

Mackey K. Hancock
Justice

Do not publish.