PD-1316-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 2/27/2015 6:49:21 PM
Accepted 3/3/2015 7:57:56 AM
ABEL ACOSTA
CLERK

## PD-1316-14

In the Court of Criminal Appeals
of Texas

## George Anthony Thurston

Petitioner-Appellant,

v.

## State of Texas

Respondent-Appellee,

On Discretionary Review from the Second Court of Appeals
Judgment and Opinion in 02-13-00242-CR

An Appeal of Cause Number 1293819D from the
371st District Court of Tarrant County, Texas

Petitioner/Appellant's Initial Brief

(Mr.) Leigh W. Davis
1901 Central Dr. Suite 708
Bedford, Texas 76021
817.868.9500
817.887.2401 (fax)
Texas Bar No. 24029505
leighwdavis@gmail.com

Oral Argument Requested

# Identity Of Parties And Counsel

## Parties to the Trial Court's Judgment

*Defendant*      George Anthony Thurston

*Prosecution*    State of Texas (Tarrant County Criminal DA)

## Trial Counsel

*Defendant*      J. Steven Bush
Texas Bar No. 03496200
314 Main Street, Suite 200
Fort Worth, Texas 76102
Telephone: 817.878.2770

Samuel Terry
Texas Bar No. 24042621
314 Main Street, Suite 200
Fort Worth, Texas 76102
Telephone: 817.882.9977

*State*      Timothy Bednarz
Texas Bar No. 02029039
Kelly Loftus
Texas Bar No. 00787916
Assistant District Attorneys
401 West Belknap
Fort Worth, Texas 76196-0201
Telephone: 817.884.1400

**Appellate Counsel**

| | |
|---|---|
| *Defendant* | (Mr.) Leigh W. Davis |
| | 1901 Central Drive |
| | Suite 708 LB 57 |
| | Bedford, Texas 76021 |
| | State Bar No. 24029505 |
| | Telephone: 817.868.9500 |
| | |
| *State* | Charles M. Mallin |
| | Texas Bar No. 12867400 |
| | 401 W. Belknap St. |
| | Fort Worth, TX 76196 |
| | Texas bar no. 21492600 |
| | Telephone: 817.884.1400 |

**Trial Court**

371st District Court, Tarrant County

**Trial Judge**

The Honorable Mollee Westfall

# Table Of Contents

Identity of Parties and Counsel.................................................i

Table of Contents.............................................................iii

Index of Authorities .........................................................v

Statement of the Case ........................................................vi

Statement Regarding Oral Argument.............................................viii

Issues Presented .............................................................viii

Statement of Facts ...........................................................1

Summary of the Argument ......................................................4

Argument .....................................................................5

I. In the context of tampering with evidence, how far does the "impending or about to take place" definition of "pending" extend? Is it limited to investigations flowing directly from the defendant's actions? Or does it extend to situations where the defendant is both temporally and proximately removed from the initiation of the investigation? ............................................................5

In the Tampering With Evidence Statute, some courts of appeals have held that "pending" means "impending or about to take place." ...................................................................5

In this case, the court of appeals held that the evidence was sufficient to show that Thurston knew there would be an investigation and took action to conceal the body. ...................................7

Thurston committed no action in the presence of any investigation; his actions were days removed from the initiation of the investigation and did not directly initiate it. The cases cited by the court of appeals' opinion are factually distinguishable from this case. .....................................................................9

Other cases illustrate the need for the defendant's or a third party's proximity to the investigation for the defendant to tamper with evidence. ...........................................................................11

The court of appeals holding in this case the extended the "impending or about to take place" definition of "pending" beyond anything currently found in the Texas jurisprudence...................12

The court of appeals opinion rewrites the tampering with evidence statute. Alternatively, the opinion contravenes the statute because it affirms Thurston's conviction for actions leading to the investigation. ..........................................................................13

Prayer....................................................................................................16

Certificate of Service............................................................................17

Certificate of Compliance.....................................................................18

# Index Of Authorities

## Cases

*Barrow v. State*,
241 S.W.3d 919 (Tex. App.—Eastland 2007, pet. ref'd)................7, 11

*Briscoe v. State*,
No. 03-11-00014-CR, 2013 WL 4822878 (Tex. App.—Austin Aug.
29, 2013, no pet.)..............................................6, 7, 8, 9, 10

*Lumpkin v. State*,
129 S.W.3d 659 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) ........
..................................................6, 7, 8, 9, 10, 11

*Pannell v. State*,
7 S.W.3d 222 (Tex. App.—Dallas 1999, pet. ref'd) ....................11, 12

*Lewis v. State*,
56 S.W.3d 617 (Tex. App.—Texarkana 2001, no pet.) ......................11

## Statutes and Rules

Tex. Pen. Code § 37.09(a)(1)......................................vi, 5, 14

Tex. Pen. Code § 12.42(b)................................................vi

## Statement Of The Case

This was a prosecution for murder and tampering with evidence. The State alleged that George Thurston killed Walter James Anders and then hid and later dumped his body.[1] The indictment charging tampering with evidence included two paragraphs. The first paragraph alleged that Thurston knew a murder had been committed and altered, destroyed, or concealed the body to impair its verity or availability in the subsequent investigation or proceeding. The second paragraph alleged that Thurston knew an official investigation or proceeding was pending or in progress and that he altered, destroyed, or concealed the corpse to impair its verity or availability in that investigation or proceeding. Both indictments (the murder charge and the tampering charge were in separate indictments) included repeat offender notices.[2] Because the tampering with evidence charge alleged tampering with a human corpse, this offense was a second degree felony.[3] The repeat offender notice raised the range of punishment to first degree range.[4]

---

[1] CR at 5.

[2] *Id.*

[3] Tex. Pen. Code § 37.09(a)(1) & (c).

[4] Tex. Pen. Code § 12.42(b).

The murder and tampering with evidence cases were consolidated for trial and were tried on May 6, 2013.[5] The jury acquitted Thurston of murder in Cause No. 1286534 but convicted him of tampering with evidence in this case.[6] The jury handed down an 80 year sentence.[7]

On the jury's punishment verdict, the trial court sentenced Thurston to 80 years confinement entering a judgment to that effect.[8] The trial court certified Thurston's right to appeal.[9] Thurston was again found indigent, and the trial court appointed counsel for appeal.[10] His notice of appeal was timely.[11] On appeal, the court of appeals affirmed and denied rehearing.

Thurston sought discretionary review on the following question:

> In the context of tampering with evidence, how far does the "impending or about to take place" definition of "pending" extend? Is it limited to investigations flowing directly from the defendant's actions? Or does it extend to situations where the defendant is both temporally and proximately removed from the initiation of the investigation?

On January 28, 2015, this court granted review on this question.

[5] *See e.g.*, RR Vol. 3.

[6] CR at 48.

[7] CR at 58.

[8] CR at 62.

[9] CR at 67.

[10] CR at 70.

[11] CR at 68.

**Statement Regarding Oral Argument**

This Court granted discretionary review but denied oral argument.
Should the Court later decide that oral argument would be helpful,
Thurston would desire to present argument. Thurston believes oral argument would be beneficial given the unique facts of this case and the
legal issue.

**Issues Presented**

I. In the context of tampering with evidence, how far does the "impending or about to take place" definition of "pending" extend? Is it limited to investigations flowing directly from the defendant's actions? Or does it extend to situations where the defendant is both temporally and proximately removed from the initiation of the investigation?

## Statement Of Facts

By his own admission—he testified—George Thurston shot and killed Walter James Anders in self-defense. On a Friday morning in May 2012 around 10 a.m., the two went to the liquor store and bought alcohol—Anders a bottle of rum; Thurston a six-pack of beer[12]—and returned to Lisa Juran's house where Thurston lived[13] and Anders helped with odd jobs.[14] This day the job was repairing soffits.[15] Thurston had had three beers[16] when he decided it was time to clean the guns[17]— something he did every month.[18] This was around 3 in the afternoon.[19] Thurston had gotten the first gun out and had taken it to a workbench in the garage but had not yet disassembled it when Anders,[20] who'd downed about a third-of-a-bottle of rum at this point,[21] came into the garage drunk.[22] Thurston was upset that Anders was drunk, and they

---

[12] RR 6 at 151.

[13] RR 6 at 137.

[14] RR 6 at 145.

[15] RR 6 at 145.

[16] RR 6 at 153.

[17] RR 6 at 154.

[18] RR 6 at 204.

[19] RR 6 at 154.

[20] RR 6 at 154–55.

[21] RR 6 at 155.

[22] RR 6 at 156–57.

argued.[23] Anders picked up a knife and lunged at Thurston.[24] Thurston fought Anders off heaving him away.[25] Anders landed in a pile of milk crates.[26] Anders still had the knife[27] and was trying to get up.[28] Thurston told him twice, "drop the knife."[29] Anders did not drop it.[30] Scared for his life,[31] Thurston grabbed the gun from the workbench and shot him.[32] He literally emptied the magazine.[33] Bullets hit Anders in the feet, hands, thighs, and chest.[34] Anders was shot, 12 times in all, and died.[35]

Thurston put the pistol in a desk drawer.[36] He walked out to the front porch, sat down with a beer, and rolled a couple of cigarettes "to think of what best to do."[37] After a while, he drove to the store,

[23] RR 6 at 157–58.
[24] RR 6 at 158–59.
[25] RR 6 at 158.
[26] RR 6 at 159.
[27] RR 6 at 159.
[28] RR 6 at 159.
[29] RR 6 at 159.
[30] RR 6 at 159.
[31] RR 6 at 160.
[32] RR 6 at 159.
[33] RR 6 at 160.
[34] RR 6 at 195–96.
[35] RR 6 at 160, 164.
[36] RR 6 at 164.
[37] RR 6 at 165.

bought more beer and tobacco, and "drove around a little bit."[38] Lisa Juran, the home's owner, wasn't going to be back until late that evening.[39]

After a while, Thurston realized that no one must have heard the shots since the police never showed up.[40] He thought about calling the police himself but wanted to talk to Juran first.[41] It got late, and he went inside, turned on the television, and fell asleep on the couch.[42] The next morning, he returned to the garage, stuffed the body into a sleeping bag, wrapped the sleeping bag with a blue tarp, tied that with a rope, and stuffed the whole mess under a workbench.[43]

It was May in Texas, and the body quickly started decomposing. To combat the smell, Thurston placed air fresheners and splashed some bleach around the garage.[44] When Juran noticed and asked about the smell, Thurston told her an animal must have died in the garage.[45]

---

[38] RR 6 at 165.

[39] RR 6 at 166.

[40] RR 6 at 166.

[41] RR 6 at 166.

[42] RR 6 at 167.

[43] RR 6 at 170–72.

[44] *E.g.,* RR 5 at 36–37, 64–65, 175.

[45] RR 6 at 174.

The next night, Thurston told Juran he had shot Anders.[46] This upset her,[47] but she helped him load the tarp-wrapped body into the back of his pickup truck.[48] The next night, May 27th, Thurston dumped the body near some railroad tracks close to Juran' house.[49]

On May 30, 2012, railroad workers found the body.[50] They immediately called police, who began an investigation.[51]

## Summary Of The Argument

This Court should find that the court of appeals extended the "impending or about to take place" definition of "pending." Here, no investigation was under way. Moreover, Thurston took no action in the presence of or in proximity to anyone who would investigate or cause an investigation to begin. He was temporally and proximately removed from the initiation of the investigation: Anders had been dead for two days before Thurston moved his body; the investigation did not com-

---

[46] RR 6 at 169.

[47] RR 6 at 169.

[48] RR 6 at 173.

[49] RR 6 at 176. There's actually some disagreement about which night Thurston dumped the body. According to him it was Sunday, May 27th. According to railroad workers it was likely Monday, May 28th, which was the day a pickup truck matching Thurston's was spotted near the area where the body was found. Thurston maintains it couldn't have been May 28th because he and Ms. Juran were out of town. In any event, it was at least two days after Thurston's dumping of the body that it was found.

[50] RR 4 at 52.

[51] RR 4 at 69, 165.

mence for two days after Thurston moved Anders's body; the investigation only commenced when railroad workers found Anders's body and called police. This court of appeals opinion allows a defendant to be convicted of tampering with evidence merely because an investigation was later commenced or because the defendant's actions led to the discovery of the evidence.

**Argument**

**I. In the context of tampering with evidence, how far does the "impending or about to take place" definition of "pending" extend? Is it limited to investigations flowing directly from the defendant's actions? Or does it extend to situations where the defendant is both temporally and proximately removed from the initiation of the investigation?**

**In the Tampering With Evidence Statute, some courts of appeals have held that "pending" means "impending or about to take place."**

Texas Penal Code section 37.09(a)(1) provides as follows: "(a) A person commits an offense if, knowing that an investigation or official proceeding is pending or in progress, he: (1) alters, destroys, or conceals any record, document, or thing with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding[.]"[52] Some courts of appeals, including the Fort Worth Court

---

[52] Tex. Pen. Code § 37.09(a)(1).

of Appeals in this case, have extended the definition of "pending" to include "impending or about to take place."[53]

The genesis of the "impending or about to take place" extension of section 37.09's "pending" appears to be *Lumpkin v. State*.[54] There, the First Court of Appeals considered the difference, if any, between "pending" and "in progress in the tampering evidence.[55] The court noted that the definitions of "pending" and "in progress" appeared to be synonymous.[56] Therefore, to give every word in the statute effect and to avoid redundancy, the court continued on to the second definition of "pending."[57] Relying on a single dictionary's definition and statutes from seven states,[58] the First Court of Appeals held "that the term 'pending' in the Texas tampering-with-evidence statute means 'impending, or about to take place.'"[59]

---

[53] Slip Op. at 2 (citing *Lumpkin v. State*, 129 S.W.3d 659, 663 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd); *Briscoe v. State*, No. 03-11-00014-CR, 2013 WL 4822878, at *7 (Tex. App.—Austin Aug. 9, 2013, no pet.) (mem. op., not designated for publication).

[54] 129 S.W.3d 659 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd).

[55] *Id*. at 663.

[56] *Id*.

[57] *Id*.

[58] More specifically, these: Random House Webster's Unabridged Dictionary (2d ed. 2001); Model Penal Code § 241.7; Colo. Rev. Stat. Ann. § 18–8–610 (West 2003); D.C.-Code Ann. § 22– 723 (2001); Fla. Stat. Ann. § 918.13 (West 2003); Ky. Rev. Stat. Ann. § 524.100 (Banks–Baldwin 2003); Mont. Code Ann. § 45–7–207 (2002); Ohio Rev. Code Ann. § 2921.12 (West 2003); Utah Code Ann. § 76–8–510.5 (2003). *See Lumpkin*, 129 S.W.3d At 663.

[59] *Id*.

In 2007, the Eastland Court of Appeals, citing *Lumpkin*, embraced this definition in *Barrow v. State*.[60] In 2013, the Austin Court of Appeals, citing both *Lumpkin* and *Barrow*, embraced this definition in *Briscoe v. State*.[61] Now, in this case, the Fort Worth Court of Appeals, citing *Lumpkin* and *Briscoe*, adopted this definition: "He does not challenge that 'pending' means 'impending or about to take place.'"[62]

**In this case, the court of appeals held that the evidence was sufficient to show that Thurston knew there would be an investigation and took action to conceal the body.**

On appeal, Thurston challenged the sufficiency of the evidence supporting his tampering with evidence conviction. More specifically, he contended that an investigation was not pending or in progress when he dumped Anders's body near the railroad tracks. The dumping of Anders's body was Thurston's last action with it. The official investigation, which was initiated by the railroad workers' 911 call, did not start for at least two days afterward.

The court of appeals found the evidence supporting the conviction sufficient based on its construction of "pending." In affirming, it reject-

---

[60] *Barrow v. State*, 241 SW 3d 919, 923 (Tex. App.—Eastland 2007, no pet.).

[61] No. 03-11-00014-CR, 2013 WL 4822878 (Tex. App.—Austin Aug. 29, 2013, no pet.)

[62] Slip Op. at 2.

ed Thurston's argument and affirmed because "pending" meaning

"impending or about to take place":

> In part of his single issue, Thurston argues that the evidence is insufficient to support his conviction under this paragraph because there is no evidence that he knew an investigation was pending or in progress when he dumped the corpse at least two days before the police began investigating. He does not challenge that 'pending' means 'impending or about to take place.'[63]

The court cited *Lumpkin v. State*[64] and *Briscoe v. State*.[65] Ultimately,

the opinion held as follows:

> [T]he jury could have rationally found beyond a reasonable doubt that Thurston knew there would be an investigation after he killed the deceased and took actions to conceal the body with intent to impair its verity or availability as evidence in that investigation. Particularly, the jury could have relied on Thurston's testimony about his actions between May 25 and June 20, in addition to the extensive evidence regarding the corpse's discovery, the state of the corpse upon its discovery, and the subsequent investigation.[66]

---

[63] Slip Op. at 2 (citations and footnotes omitted).

[64] 129 S.W.3d 659, 663 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd).

[65] No. 03-11-00014-CR, 2013 WL 4822878, at *7 (Tex. App.—Austin Aug. 29, 2013, no pet.).

[66] Slip Op. at 6.

**Thurston committed no action in the presence of any investigation; his actions were days removed from the initiation of the investigation and did not directly initiate it. The cases cited by the court of appeals' opinion are factually distinguishable from this case.**

The court of appeals opinion relied on *Lumpkin v. State*[67] and *Briscoe v. State*.[68] In *Lumpkin*, the defendant was stopped for speeding by a Harris County Sheriff's deputy.[69] As the deputy approached the car, Lumpkin swallowed cocaine.[70] Lumpkin swallowed the cocaine in the presence of the deputy who saw him "ingesting some white substance and then was consuming it down with a cup of what [he] thought at the time was liquid."[71]

In *Briscoe*, the defendant enjoyed rough sex with prostitutes—especially choking them during intercourse. Briscoe hired a prostitute, Amy Dickey.[72] Dickey worked with a driver who took her to Briscoe's apartment complex.[73] When she reached Briscoe's apartment, she called her driver to report the apartment number she would be in.[74]

---

[67] 129 S.W.3d 659, 663 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd).

[68] No. 03-11-00014-CR, 2013 WL 4822878, at *7 (Tex. App.—Austin Aug. 29, 2013, no pet.).

[69] *Lumpkin*, 129 S.W.3d at 661.

[70] *Id.*

[71] *Id.*

[72] *Briscoe*, 2013 WL 4822878 at *1.

[73] *Id.*

[74] *Id.*

There, Briscoe and Dickey had intercourse.[75] Briscoe admitted that he choked her for five minutes killing her.[76] Briscoe moved and hid the body while Dickey's driver waited for her.[77] The court held that the presence of Dickey's driver meant that Briscoe "was aware Dickey's driver was waiting outside for her and would notice that she was missing, thus triggering an investigation into her disappearance."[78]

In both *Lumpkin* and *Briscoe*, the defendants committed their offenses in the presence or proximity of another individual—in *Lumpkin*, the Harris County Sheriff's deputy; in *Briscoe*, the prostitute's driver. The courts reasoned that these persons would immediately investigate or cause to be investigated the crime for which the evidence was tampered. Here, there was no such person. Thurston did not act in the presence of a law enforcement officer investigating any offense much less an offense involving Anders's body. Thurston did not act in proximity to anyone who would have cause to report an offense—any offense. Instead, he merely moved Anders's body two days after he was killed to the place where it was discovered a couple of days after being moved.

---

[75] *Id.*

[76] *Id.*

[77] *Id.* at *7.

[78] *Id.*

10

**Other cases illustrate the need for the defendant's or a third party's proximity to the investigation for the defendant to tamper with evidence.**

The cases cited by both sides in *Lumpkin* illustrate this. In *Lumpkin*, the State cited *Lewis v. State*[79] while the defense cited *Pannell v. State*.[80] Though cited by opposing parties, both cases illustrate this principle.

In *Lewis*, the defendant attempted—mostly successfully—to eat a baggy of cocaine after being stopped by the police for an improperly positioned dealer tag.[81] When the officer removed the defendant from the car for officer safety, he saw him eating the baggy of cocaine.[82] The defendant refused the officer's commands to spit the bag out.[83] His conviction for tampering with evidence was affirmed.[84]

Conversely, if the investigation pertaining to the tampered with evidence has not commenced, the defendant cannot be guilty of evidence

---

[79] 56 S.W.3d 617 (Tex. App.—Texarkana 2001, no pet.).

[80] 7 S.W.3d 222 (Tex. App.—Dallas 1999, pet. ref'd)

[81] *Lewis*, 56 S.W.3d at 618–19.

[82] *Id.* at 619.

[83] *Id.*

[84] *Id.* at 625. The same was true in *Barrow v. State*, 241 S.W.3d 919 (Tex. App.—Eastland 2007, pet. ref'd). There, the officer was conducting surveillance on a suspected drug trafficking location. *Id.* at 920–21. After witnessing a possible narcotics transaction, the officer stopped the defendant. *Id.* When stopped, the defendant had an off-white, rock-like substance in his mouth. *Id.* Instead of spitting it out as commanded by the officer so that the substance could be recovered and the controlled substance offense investigated, the defendant swallowed it. *Id.*

tampering. In *Pannell*, when the police officer was attempting to make a traffic stop, Pannell threw marijuana and a lit joint out his car window.[85] The conviction was reversed because the investigation at the time the defendant threw the pot out the window was limited to a traffic violation not a marijuana offense.[86]

**The court of appeals holding in this case the extended the "impending or about to take place" definition of "pending" beyond anything currently found in the Texas jurisprudence.**

The court of appeals extended the construction of "impending or about to take place" definition of "pending" beyond existing Texas jurisprudence. No investigation was "impending or about to take place" when Thurston moved the body. Thurston didn't tamper with any evidence in the presence of a law enforcement officer—much less one investigating a crime. And unlike *Briscoe*, there was no other individual present when Anders died. Anders had already been dead for a couple of days when his body was moved and a couple more before his body was found and the investigation commenced.

Thurston is removed from the initiation of the investigation both temporally and proximately. His moving Anders's body was two days

---

[85] *Pannell*, 7 S.W.3d at 223.

[86] *Id*. at 224.

12

after Anders's death and two days before any law enforcement involvement. His moving Anders's body ultimately led to its discovery—but only indirectly. Railroad workers found it and called 911, which triggered the investigation. The holding in this case is a holding under which there's no practical limit to "impending or about to take place." At a minimum, "impending or about to take place" is now days removed from the underlying actions and days before any investigation.

**The court of appeals opinion rewrites the tampering with evidence statute. Alternatively, the opinion contravenes the statute because it affirms Thurston's conviction for actions leading to the investigation.**

The court of appeals opinion appears to have affirmed, at least in part, based on the subsequent investigation:

> [T]he jury could have rationally found beyond a reasonable doubt that Thurston knew there would be an investigation after he killed the deceased and took actions to conceal the body with intent to impair its verity or availability as evidence in that investigation. *Particularly, the jury could have relied* on Thurston's testimony about his actions between May 25 and June 20, in addition to the extensive evidence regarding the corpse's discovery, the state of the corpse upon its discovery, and *the subsequent investigation*.[87]

The court of appeals affirmed because there was a subsequent investigation? Thurston knew that an investigation was pending because one

---

[87] Slip Op. at 6 (emphasis added).

occurred in the future? That is tantamount to rewriting 37.09(a)[88] to read "if, an investigation or official proceeding might or actually does occur at some point in the future, ...."

Alternatively, this opinion affirmed Thurston's conviction for tampering with evidence when his actions actually led to the discovery of the body, which led to the investigation. At its outset, the opinion casts Thurston's issue thusly: "Thurston argues that the evidence is insufficient to support his conviction under this paragraph because there is no evidence that he knew an investigation was pending or in progress when he dumped the corpse at least two days before the police began investigating."[89] The opinion affirms, at least in part, based on "Thurston's testimony about his actions between May 25 and June 20, in addition to the extensive evidence regarding the corpse's discovery, the state of the corpse upon its discovery[.]" This ignores that Thurston's moving the body—ostensibly the tampering act—led to its discovery. Moreover, it ignores Thurston's desire that the body be

---

[88] Texas Penal Code section 37.09(a)(1): "(a) A person commits an offense if, knowing that an investigation or official proceeding is pending or in progress, he: (1) alters, destroys, or conceals any record, document, or thing with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding[.]"

[89] Slip Op. at 2.

found.[90] Section 37.09(a) criminalizes impairing evidence. Thurston's moving the body did not impair it; it made the body available. Thus, the opinion affirms on a basis not a violation of the statute.

---

[90] RR 6 at 176 ("I took him down there by the tracks where they would find him, somebody would find him, railroad tracks, driving by, somebody might drive by and see him, you know.").

**Prayer**

Petitioner/Appellant respectfully prays that this Court will reverse the judgment of the court of appeals and find that no investigation was "impending or about to take place" when Thurston moved Anders's body thereby making the evidence insufficient to support Thurston's conviction in this case.

Respectfully submitted,

/s/ Leigh W. Davis_____
(Mr.) Leigh W. Davis
1901 Central Dr. Suite 708
Bedford, Texas 76021
817.868.9500
817.887.2401 (fax)
Texas Bar No. 24029505
leighwdavis@gmail.com

## Certificate Of Service

I hereby certify that a copy of this brief has been served on the following persons or parties on February 27, 2015:

Appellate Division
Tarrant County Criminal District Attorney's Office
401 W. Belknap
Fort Worth, Texas 76102
coaappellatealerts@tarrantcounty.com

Lisa C. McMinn
State Prosecuting Attorney
P.O. Box 13046
Capitol Station
Austin, Texas 78711
lisa.mcminn@spa.texas.gov


s/ Leigh W. Davis_____
(Mr.) Leigh W. Davis

## Certificate Of Compliance

This document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Tex. R. App. P. 9.4(i), if applicable, because it contains 4,496 words, excluding any parts exempted by Tex. R. App. P. 9.4(i)(1).

s/ Leigh W. Davis_____
(Mr.) Leigh W. Davis